UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LARRY J. CRAFT,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,[1]<br><br>　　　　　　Defendant. | NO.  C16-964-JPD<br><br><br>ORDER REVERSING AND<br>REMANDING FOR FURTHER<br>ADMINISTRATIVE PROCEEDINGS |

Plaintiff Larry J. Craft appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit.  The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

ORDER - 1

I.  FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a fifty-three year old man with a high school education and one year of college. Administrative Record ("AR") at 68. His past work experience includes employment as a poultry cutter, store laborer, and floor waxer. AR at 65, 80. Plaintiff was last gainfully employed at McClendon Hardware in 2009 when he was terminated for alleged misconduct against a co-worker. AR at 70-72. Plaintiff testified that he has been unable to obtain employment after that incident. AR at 70-71.

On February 8, 2013, plaintiff filed a claim for SSI payments and DIB, alleging an onset date of April 30, 2009. AR at 18. At the administrative hearing, plaintiff amended his alleged disability onset date to October 21, 2011. AR at 18.[2] Plaintiff asserts that he is disabled due to degenerative disc disease, major depressive disorder, anxiety disorder, obesity, hypertension, and "learning disorder versus borderline intellectual functioning." AR at 56.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 18. Plaintiff requested a hearing, which took place on August 6, 2014. AR at 50-95. On January 30, 2015, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 15-29. The Appeals Council denied plaintiff's request for review, AR at 8-11, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On July 1, 2016, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

---

[2] Plaintiff had previous applications for benefits which were denied by the ALJ on May 12, 2011. AR at 96-124. As a result, the remaining issue was whether plaintiff has been disabled since May 13, 2011.

ORDER - 2

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

ORDER - 3

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Mr. Craft bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[3] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one

---

[3] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

ORDER - 4

or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V. DECISION BELOW

On January 30, 2015, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2. The claimant has not engaged in substantial gainful activity since October 21, 2011, the amended alleged onset date.

ORDER - 5

3. The claimant has the following severe impairments: Degenerative disc disease; major depressive disorder; anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ladders, ropes or scaffolds. He can occasionally stoop, kneel, crouch and crawl. He can frequently climb ramps and stairs. He can frequently balance. He must avoid concentrated exposure to hazards. He can perform simple routine and repetitive tasks. He can have occasional superficial contact with coworkers, supervisors and the general public. He can have few, if any, changes in his work routine or setting.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1961 and was 50 years old, which is defined as an individual closely approaching advanced age, on the amended alleged disability onset date.[4]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 21, 2011, through the date of this decision.

AR at 20-29.

### VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating plaintiff's credibility?

2. Did the ALJ err in evaluating the medical opinion evidence?

---

[4] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

ORDER - 6

Dkt. 11 at 1; Dkt. 12 at 1.

## VII.   DISCUSSION

### A.   The ALJ Did Not Err in Evaluating Plaintiff's Credibility

#### 1.   *Legal Standard for Evaluating the Plaintiff's Testimony*

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.[5] *Burrell v. Colvin* 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

---

[5] In Social Security Ruling (SSR) 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p. However, this change is effective March 28, 2016 and not applicable to the January 30, 2015 ALJ decision in this case. The Court, moreover, continues to cite to relevant case law utilizing the term credibility.

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### 2. The ALJ Provided Several Clear and Convincing Reasons for Rejecting Plaintiff's Testimony

The ALJ rejected plaintiff's testimony by finding that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. AR at 23. Initially, under the heading, "Medical Evidence – Chronology and Inconsistencies," the ALJ provided a nearly two page summary of the medical evidence in this case. AR at 23. At the beginning of this summary, the ALJ stated, "the claimant's allegations are inconsistent with the objective medical evidence in the file." AR at 23. Similarly, at the end of the summary, the ALJ stated that "the objective medical evidence supports the limitations outlined in the residual functional capacity." AR at 25. However, throughout this lengthy summary of the medical evidence, the ALJ did not explain *how* any of the evidence was inconsistent with plaintiff's statements. AR at 23-24. Without such an explanation, the Court is left without any meaningful basis to review the ALJ's reasoning. An ALJ does not provide clear and convincing reasons for rejecting a

claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). It is not the role of this Court to intuit what the ALJ must have been thinking in reviewing all the medical evidence in the record, and concluding that it is inconsistent with plaintiff's testimony. Thus, this initial portion of the ALJ's credibility discussion does not provide a clear and convincing reason for rejecting plaintiff's testimony. AR at 23-25.

The ALJ did, however, ultimately identify several valid reasons for rejecting plaintiff's testimony in this case. AR at 25-26. The ALJ found plaintiff's statements regarding his physical functioning to have been contradicted by "the limited treatment records in the claimant's file and the examination done by Dr. Karvelas." AR at 25. The ALJ stated that plaintiff's physical examinations consistently showed no abnormalities, despite his claims of severe physical limitations. For example, he walked with a normal gait, his straight leg raise tests were negative, his neurology was intact, and his extremities showed no abnormality. AR at 25. Dr. Karvelas concluded, after his physical examination, that plaintiff had no sitting, standing, or walking restrictions. AR at 24, 582. The ALJ could reasonably conclude that Dr. Karvelas' objective findings on examination, which showed no abnormalities, contradicted plaintiff's statements to the contrary. This was a clear and convincing reason, supported by substantial evidence, for the ALJ to reject plaintiff's testimony. *See Carmickle*, 533 F.3d at 1161.

The ALJ also found that "the claimant's own statements regarding his abilities," as well as plaintiff's daily activities, contradicted plaintiff's testimony and supported the ALJ's RFC assessment in this case. AR at 25. For example, the ALJ noted that although plaintiff reported difficulty getting along with others, plaintiff "testified he lives with his friends and they assist him with his activities of daily living. He was consistently cooperative and polite during

ORDER - 9

treatment sessions and examinations." AR at 25. With respect to plaintiff's daily activities, although plaintiff reported difficulty competing tasks, the ALJ noted that plaintiff has no difficulty visiting public places, leaving his home alone, using public transportation, or shopping in grocery stores. AR at 25, 368. The ALJ also pointed out that plaintiff is able to pay bills, count change, handle a savings account, and use a checkbook. AR at 26, 368. The ALJ reasonably found that plaintiff's ability to get along with others and visit public places is consistent with the ability to have occasional superficial contact with supervisors, coworkers, and the general public, and contradicted his claims of a totally debilitating impairment. AR at 25-26. Even when a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

Finally, the ALJ cited plaintiff's lack of effort on examination with Dr. Karvelas as a primary reason for rejecting plaintiff's statements. AR at 24-25. Dr. Karvelas noted that plaintiff "did not give good effort with manual muscle testing, in some cases demonstrated less than anti-gravity strength when he clearly does have anti-gravity strength with other activities such as ambulating or gesturing with his arms." AR at 24, 581. Dr. Karvelas concluded that plaintiff had "a lack of appropriate effort on physical exam today." AR at 24-25, 582. The Ninth Circuit has held that a plaintiff's failure to give maximum or consistent effort during a physical examination is a clear and convincing reason for an ALJ to reject his or her statements. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Indeed, the Ninth Circuit has described such lack of effort as a "compelling" basis for discrediting a plaintiff's testimony. *Id*.

Accordingly, although the ALJ's lengthy summary of medical evidence supporting the RFC was not helpful to the Court in reviewing the ALJ's assessment of plaintiff's testimony,

ORDER - 10

the ALJ did ultimately provide several clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's statements.  This case is therefore distinguishable from *Brown-Hunter*, and the ALJ did not commit harmful error in evaluating plaintiff's testimony.

As discussed below, however, this case must be remanded for further administrative proceedings because the ALJ erred in evaluating the medical opinion evidence in this case.  On remand, the ALJ should reassess plaintiff's credibility, as needed, and refrain from simply summarizing the medical evidence in the file without explaining why he believes that evidence was inconsistent with plaintiff's statements.

      B.    <u>The ALJ Erred in Evaluating the Medical Opinion Evidence</u>

           1.    *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22

(9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2.    William R. Wilkinson, Ed.D.

On December 28, 2011, Dr. Wilkinson examined plaintiff for DSHS.  AR at 451-56.  He diagnosed plaintiff with major recurrent depression (marked), anxiety disorder, and compulsive dependent features (deferred), and assessed a GAF score of 49.  AR at 451-52.[6]

---

[6] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).  A GAF score falls within a particular 10-point range if either the symptom severity or the level

Dr. Wilkinson indicated that he personally observed plaintiff's symptoms of depression and anxiety. AR at 451. On mental status examination, Dr. Wilkinson observed that plaintiff (1) frowned constantly; (2) appeared tired and in pain and discomfiture; (3) was slow in his responses, but appeared to try to do his best; (4) showed an affect that was "down" and in line with situations; (5) was slow-talking and moved slowly (in a great deal of pain); (6) showed poor concentration at digit span, struggling to attain 3B and 4F at his second attempts; (7) showed a poor fund of knowledge, as he believed Bush was the President, the sun rose in the North, there were 380 days in a year, and he did not know any current news events; (8) could not subtract serial 7s from 100 in three attempts, or serial 3s from 5, and misspelled "world"; (9) showed intelligence at low average with some possible learning challenges in reading and spelling; and (10) showed impulsive judgment, as he would shout "fire" in a crowded movie theater if he noticed smoke or fire. AR at 454. Dr. Wilkinson further noted that plaintiff was cooperative, dressed appropriately, goal-oriented, fully oriented as to time, place, and person, and had a "fair to good remote memory, except when it came to substance dependence history and in that case appeared to be selectively poor." AR at 454.

With respect to the effect of plaintiff's symptoms on plaintiff's ability to work, Dr. Wilkinson opined that plaintiff's cognitive functioning is such that "he would have difficulty following directions (quite slow thinking), remembering things, keeping his mind to task and he would be mistake and conceivably accident prone. He is quite wary of others . . . and he would not get along well with others in the team effort generally required of doing warehouse

---

of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.*

ORDER - 13

or retail sales work." AR at 453. Dr. Wilkinson noted that "his physical limitations are the purview of medical doctors, but the pain does add to the depression and anxiety, which again, takes away from the cognitive and social functioning." AR at 453. He noted that plaintiff can perform his activities of daily living, make and deep appointments, and relate in a social sense to family and to friends. AR at 453. Finally, Dr. Wilkinson opined that plaintiff's "chief limitation appears to be the physical, although cognitively he is slow these days." AR at 453.

Dr. Wilkinson examined plaintiff a second time for DSHS on December 18, 2013. AR at 502-07. He diagnosed plaintiff with major recurrent depression (moderate to marked), anxiety disorder (with features of generalized anxiety disorder, adjustment and some PTSD), alcohol dependence in late sustained full remission by plaintiff's report, and assessed a GAF score of 50. AR at 503-04. Among other moderate limitations, Dr. Wilkinson opined that plaintiff is markedly impaired in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, complete a normal work day and work week without interruptions from psychological symptoms, and maintain appropriate behavior in a work setting. AR at 504. On mental status examination, Dr. Wilkinson observed that plaintiff showed poor recent and immediate memory, poor remote memory regarding dates, fair to poor fund of knowledge (as he thought the sun set in the north and Seattle was the capital of Washington), had concentration problems, needed directions repeated, and completed only two steps of a three-step command, and showed no insight into his mental health and CD issues and did not "connect understandings of them and/or consequences related to his conditions." AR at 507.

The ALJ gave Dr. Wilkinson's opinion "little weight" because although he had the opportunity to examine plaintiff, "his mental status examination of the claimant does not support his conclusion that the claimant would be markedly limited. The claimant can perform

ORDER - 14

his activities of daily living, count change, use public transportation and prepare meals despite his alleged mental impairments." AR at 27. The ALJ noted that plaintiff is also "consistently alert and oriented in all spheres. In addition, he demonstrated the actual ability to perform a three-step task without difficulty." AR at 27. Finally, the ALJ noted that "Dr. Wilkinson also appears to base his opinion on the claimant's own statements regarding his limitations. Because I find the claimant's allegations to be less than fully credible in light of his performance during Dr. Karvelas' evaluation, I cannot give significant weight to an opinion based on those allegations." AR at 27.

The ALJ's rejection of Dr. Wilkinson's opinion based upon the fact that the marked limitations he assessed were not supported by his mental status examination results is not specific, legitimate, or supported by substantial evidence. The ALJ fails to acknowledge that both of the mental status examinations performed by Dr. Wilkinson described *numerous* clinical findings that appear to support his opinions regarding plaintiff's marked and moderate functional limitations. AR at 454, 507. For example, contrary to the ALJ's assertion that plaintiff "demonstrated the actual ability to perform a three-step task without difficulty," AR at 27, plaintiff failed to perform a three-step task correctly during the Dr. Wilkinson's most recent examination. AR at 507. Plaintiff could only successfully perform two of the three steps for Dr. Wilkinson. AR at 507.[7] Although plaintiff may be able to "perform his activities of daily living, count change, use public transportation and prepare meals despite his alleged mental impairments," the ALJ fails to explain how these activities are necessarily inconsistent with Dr. Wilkson's findings regarding plaintiff's ability to perform activities within a schedule,

---

[7] The Court is not persuaded that the fact that plaintiff was able, on one other occasion, to successfully perform a three-step task for Dr. Rogers undermines Dr. Wilkinson's opinion and the results of his mental status examinations. AR at 478.

maintain regular attendance, be punctual without special supervision, complete a normal work day and work week without interruptions from psychological symptoms, and maintain appropriate behavior in a work setting. AR at 504.

Finally, although Dr. Wilkinson necessarily relied on plaintiff's statements during his clinical interview, this is not a case where Dr. Wilkinson based his opinions solely upon plaintiff's statements. As noted above, Dr. Wilkinson noted numerous abnormal results on mental status examination in plaintiff's memory, fund of knowledge, concentration, and insight. AR at 454, 507. The ALJ has not identified any reason for finding that Dr. Wilkinson did not rely on these examination results to assess his marked and moderate limitations in functioning. AR at 454, 507. Although the Commissioner offers several *post hoc* rationalizations that attempt to intuit what the ALJ may have been thinking in weighing the evidence and reaching this conclusion, the Court must review the ALJ's decision based on the reasoning and factual findings offered by the ALJ. *See Bray v. Com'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009). Thus, although the ALJ did not err by finding plaintiff's statements less than fully credible in this case, it does not appear that Dr. Wilkinson unduly relied on plaintiff's statements – and ignored his mental status examination findings - in forming his opinions.

Accordingly, the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Wilkinson's opinions. This error was harmful, because the ALJ did not include all of Dr. Wilkinson's assessed limitations in the RFC assessment. On remand, the ALJ shall reevaluate the medical opinion evidence, including Dr. Wilkinson's opinion, and provide legally sufficient reasons for rejecting Dr. Wilkinson's opinions if such a conclusion is warranted.

### 3. W. Michael Rogers, Psy.D.

On May 19, 2013, Dr. Rogers performed a mental disability evaluation for DSHS. AR at 476-79. He diagnosed plaintiff with major depressive disorder (severe without psychotic features), anxiety disorder, and assessed a GAF score of 45. AR at 478-79. On mental status examination, Dr. Rogers observed that plaintiff (1) showed some evidence of psychomotor retardation; (2) was cooperative and pleasant and showed no indication of malingering; (3) had an affect that seemed depressed and flat; (4) showed soft speech that was somewhat delayed; (5) could only recall two of the three past presidents and his digit span was limited to four digits forward and one digit backwards; (6) was unable to identify a single current event; (7) identified Idaho and Montana as the states bordering Washington; (8) was unable to perform serial sevens, but was able to follow a three-step command without difficulty; (9) was unable to spell "world" backwards; (10) was unable to interpret either of two proverbs; and (11) showed questionable judgment, indicating that he would leave if he smelled smoke in a crowded theater. AR at 477-78.

Dr. Rogers provided the following functional assessment:

> Claimant has the capacity to reason and to understand. Memory, concentration, and persistence all seem impaired as evidenced by responses to questions during this examination. Social interactions are currently limited per self-report (i.e. claimant feels jilted by others and tends to avoid interpersonal relationships as a result). As noted above the claimant appears to have a good premorbid level of functioning. As well, he obtained a good deal of life satisfaction from working. The claimant's level of adaptation is therefore fair.

AR at 479. Dr. Rogers also opined that plaintiff's prognosis is "fair," and that plaintiff "appears to have a good premorbid level of functioning and could probably return to a higher level of functioning with some type of pharmacological or psychological interventions." AR at 479.

The ALJ indicated that he gave "significant weight to the opinion of Dr. Rogers who found the claimant has the capacity to reason and understand. Although his cognitive and social functioning was limited, Dr. Rogers found he had a good premorbid level of functioning that would likely improve with pharmacological or psychological interventions." AR at 26.

Plaintiff contends that Dr. Rogers did not actually "find" that plaintiff would be able to return to a level of functioning that would allow him to perform full-time competitive work, nor did he predict when plaintiff would return to such a level of functioning. Dkt. 11 at 6. Rather, plaintiff asserts that Dr. Rogers was simply expressing his opinion. Plaintiff argues that the ALJ mischaracterized Dr. Rogers' opinion by incorrectly asserting that "Dr. Rogers found" that plaintiff would improve, *i.e.*, be capable of returning to full-time competitive work. Dkt. 13 at 3-4.

The Commissioner argues that Dr. Rogers noted that plaintiff could reason and understand, but had impaired memory, concentration, and persistence, and that his social interactions were limited. AR at 479. The Commissioner asserts that consistent with these findings, the ALJ reasonably limited plaintiff to simple routine and repetitive tasks, only occasional superficial contact with coworkers, supervisors, and the general public, and few (if any) changes in the work setting. AR at 22. *See Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("The ALJ is responsible for translating the incorporating clinical findings into a succinct RFC"). Moreover, when the ALJ incorporates a doctor's assessed limitations into the RFC, there is no conflict to resolve. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Thus, the Commissioner argues that at most, plaintiff provides a contrary of interpretation of Dr. Rogers' opinion. Dkt. 12 at 9.

The Court agrees with the Commissioner. Here, plaintiff attempts to make a distinction without a difference. The ALJ stated that "although his cognitive and social functioning was

ORDER - 18

limited, Dr. Rogers found he had a good premorbid level of functioning that would likely improve with pharmacological or psychological interventions." AR At 26. The ALJ did not, for example, mischaracterize Dr. Rogers' opinion by stating that Dr. Rogers opined that plaintiff would certainly become capable of returning to full-time competitive work. The Court is not persuaded that the ALJ misunderstood Dr. Rogers' statement to mean more than what he said: "Claimant appears to have a good premorbid level of functioning and could probably return to a higher level of functioning with some type of pharmacological or psychological interventions." AR at 479. Plaintiff has not shown any harmful error by the ALJ in evaluating Dr. Rogers' opinion.[8]

## VIII.   CONCLUSION

For the foregoing reasons, this case is REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.

DATED this 5th day of April, 2017.

*[signature: James P. Donohue]*

JAMES P. DONOHUE
Chief United States Magistrate Judge

---

[8] The Court declines to address plaintiff's miscellaneous arguments that the ALJ failed to properly evaluate other medical evidence in the record, as plaintiff does not raise any specific assignments of error in this discussion with the requisite specificity. Dkt. 11 at 6-10. It is not enough to present an argument in the skimpiest way, and leave the Court to do the counsel's work – framing the argument and putting flesh on its bones through a discussion of the applicable law and facts. The Court need not address an alleged assignment of error that is not argued with any specificity in the party's briefing. *Carmickle v. Commissioner*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).